THE MAYOR AND ALDERMEN OF THE CITY OF SAVANNAH *v.* THE VERNON SHELL ROAD COMPANY.

The charter of a company granted by the legislature in 1859 to construct and maintain a turnpike road, "to be constructed and laid on and over the bed" of a certain designated public highway then ex-

isting, invested the company, after the construction was completed. according to the terms of the charter, with the exclusive title and ownership of the highway on and over the bed of which the turnpike road was constructed and laid. And though, after the adoption of the constitution of 1877, the limits of a city adjacent to one of the *termini* of the turnpike road were extended so as to throw the toll-house and a considerable section of the road inside of the new city limits, the city authorities could not, without condemnation proceedings and making compensation, appropriate to public use such section of the road by adopting it as a street; nor could they extend across said road any of the streets, save on like terms.

January 11, 1892.

Roads and streets. Corporations. Title. Before Judge FALLIGANT. Chatham superior court. June term, 1891.

Reported in the decision.

S. B. ADAMS and NORWOOD & CRONK, for plaintiff in error

SAUSSY & SAUSSY, *contra*.

SIMMONS, Justice.

In 1859 there was a public highway leading from the city of Savannah to White Bluff on the Vernon river. In the same year the legislature incorporated the Vernon Shell Road Company, authorizing the company "to construct and build a shell road from the city of Savannah to White Bluff . . on the Vernon river in the county of Chatham, to be constructed and laid on and over the bed of the White Bluff road, . . provided the assent of the inferior court and commissioners of roads of Chatham county shall first be obtained for constructing, building and laying the same over the bed of said White Bluff road." The assent of the inferior court and the commissioners of roads was obtained by the company, and it did construct and build a shell road from the city of Savannah to White Bluff over and upon the road-bed of the public highway, which was completed in 1860. The 6th section of the act provides that "all rights in the property acquired by the com-

pany in the said road when completed, shall be vested in the stockholders, their heirs, legal representatives or assigns forever, and in proportion to their respective shares." When this act was passed by the legislature, the southern boundary of the city of Savannah was Anderson street. In 1883 the legislature passed an act extending the city limits some distance beyond Anderson street, and the limits thus extended embraced the *terminus* of the shell road at Anderson street, a toll-gate, and a considerable part of the road between Anderson street and White Bluff. The city authorities, subsequent to the passage of the act of 1883, laid out additional streets in the new territory, some of which crossed at right angles that part of the shell road which was within the new limits, and Bull street was extended so as to include that part of the road. The shell road company had erected wire fences along both sides of its road to protect it from trespassers, and a portion of these fences was within the new limits. The city authorities gave notice to the officers of the company to remove these fences and the toll-gate which was within the city limits, and in case of refusal by the company to remove them, a city officer was directed to do so. The shell road company thereupon filed its bill against the city, claiming that this road was its private property, and praying that the city be enjoined from interfering therewith without first paying the company just compensation therefor.

The defendant claimed in its answer that no title or ownership of any kind as to the bed of the road or its soil was conferred on the petitioner, and that the same remained in the public as a part of the public highway; that the shell road company had no authority to erect the wire fences, because they obstructed Fifth, Sixth, Seventh and Eleventh streets, which intersected the road, thereby preventing the use of those streets for

travel ; that the road in question is a continuation of Bull street, and is within the corporate limits of the city as established by the act of 1883; that the city had authority to remove the obstructions, under the power vested in it and under the ordinances passed in pursuance thereof. On the trial of the case the jury returned a verdict for the plaintiff, and the city excepted.

The legislature has control of all the public highways in this State, and had power to incorporate the shell road company, and to authorize it to construct a shell road on and over the bed of the White Bluff road, although the latter was a public road at the time. Elliott, Roads and Streets, p. 55, and authorities there cited. "No additional burden is imposed by changing a public highway into a toll-road. The change is not in the character of the servitude, but in a mode of sustaining the highway. In the one case it is sustained by taxes, in the other by tolls." Carter v. Clark, 89 Ind. 239, and authorities there cited. "The character of the way is not changed from a public to a private one, for the public are not excluded from the use of the way. It is still open to all the people on equal terms; that is, all may travel on it by paying the tribute laid on all alike." Elliott, Roads and Streets, supra. But when it was built by the company in conformity to its charter, the easement which the public had hitherto had in the highway was assigned by operation of law to the company, and the easement in the public highway became the property of the company. Chagrin Falls Co. v. Cane, 2 Ohio St. 419. The public, by the act of the legislature and the assent of the county authorities, relinquished its right to the easement and conferred it upon the company. It gave up the right to pass over the road free of charge, and conferred the right upon the company to charge toll for the purpose of profit and for keeping up the road. When the company, under a contract with the legislature, built its road in the bed of the old road, it

acquired a property right in the road; and the act of the legislature extending the city limits so as to embrace a portion of the road, and the charter of the city which gives the city authorities power to lay out additional streets and full power over all the streets, lanes and alleys of the city, did not authorize the city authorities to make that portion of the road which is within the new limits a part of the city's streets, or to extend other streets across the road, without instituting proceedings as provided by law for the condemnation of the road and the payment of just compensation therefor. If the shell road is private property as we have shown, neither the legislature nor the city authorities under an act of the legislature, can take it or damage it for public purposes without just and adequate compensation being first paid. Constitution of 1877, Code, §5024. The power given in the charter of the city to lay out streets does not authorize the municipal authorities to use a portion of the shell road as one of the streets, nor to lay streets across it, without paying the owners thereof just compensation; and the power to remove obstructions from the streets does not authorize them to remove the wire fences on the sides of the shell road placed there for the protection of the company's rights, without such compensation. If they can use this private property for their streets without compensation, there is no reason why they cannot use any other private property in the city for the same purpose without compensation. And if they can use that portion of the road now within the city limits without compensation, and the city continues to grow southward, they can have its limits extended by the legislature to White Bluff and deprive the company of the whole of its property without compensation.

For these reasons the court did not err in refusing any of the charges requested, nor in giving those complained of; and the          *Judgment is affirmed.*